IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-1246-WJM-STV

PAMELA STONE, an individual,
TWYLA RUSAN, an individual,
M. JAMIE MORROW, an individual,
THE SOUTH PARK COALITION, INC.,
a body corporate, and
BE THE CHANGE USA, a body corporate,

    Plaintiffs,

v.

HIGH MOUNTAIN MINING COMPANY, LLC,
a Wyoming limited liability company, and
JAMES R. MURRAY, an individual,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on the Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). (ECF No. 17.) For the reasons that follow, the Motion is granted in part and denied in part.

### I. BACKGROUND

On April 29, 2019, Plaintiffs filed a Complaint against Defendants High Mountain Mining Company, LLC ("HMM") and James R. Murray ("Murray"). (ECF No. 1.) Plaintiff's allegations, which the Court accepts as true for purposes of the Motion, are as follows:

Defendant HMM owns and operates the Alma Placer Mine ("the Mine"). (*Id.* ¶

23.) Defendant Murray "is a managing member (owner) of High Mountain Mining and an operator of the Alma Placer Mine." (*Id.* ¶ 14.)

The Mine is a "gold placer mine" located next to the town of Alma in Park County, Colorado. Alma is located in South Park, a "valley formed by the basin of the Mosquito and Park Ranges of the Rocky Mountains." (*Id.* ¶ 18.) A portion of South Park has been designated by Congress as a National Heritage Area, and the towns of Alma and Fairplay are within said National Heritage Area. (*Id.* ¶ 20.) Plaintiffs allege that HMM has been discharging pollutants from the Mine into the Middle Fork of the South Platte River (the "Middle Fork"), a navigable water of the United States that runs through South Park. (*Id.* ¶¶ 1, 21.) Plaintiffs argue that, in doing so without a National or State Pollutant Discharge Elimination System ("NPDES" or "SPDES") permit, HMM is in violation of §§ 301 and 402 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1331(a), 1342(a)(1). (*Id.* ¶ 58.)

The Mine "uses gravity concentration to segregate and wash placer material, which consists of sand, gravel and clay/silt, to separate it from the gold, leaving behind a marketable sand and gravel byproduct. The gravel is washed with water in a series of four settling ponds" (the "Settling Ponds"). (*Id.* ¶ 27.) Settling Ponds "3 and 4 are located approximately 23.4 feet from the Middle Fork." (*Id.* ¶ 30.) Settling Ponds 1 and 2 are further away from the Middle Fork. (*Id.* ¶ 30.) Plaintiffs allege that pollutants from the Mine are concentrated in the Settling Ponds, "which are then conveyed into the groundwater system and then into surface waters of the adjacent Middle Fork." (*Id.* ¶ 41.)

Another set of ponds exists on Mine property, the "South Ponds." The water in "South Ponds 3 and 4 contributes to a wetlands area located on Alma Placer Mine property northeast of two culverts," the "North Culvert" and the "South Culvert." (*Id.* ¶ 33.) Water flows from said wetlands area through the culverts (both of which "begin on [ ] Mine property") and, from the culverts, directly into the Middle Fork. (*Id.* ¶ 33–34.) Sampling of the discharges from the North and South Culverts . . . reveal pollutants present therein." (*Id.* ¶ 48.)

Plaintiff Pamela Stone ("Stone") lives on riparian land of the Middle Fork, in the town of Fairplay. (*Id.* ¶ 8.) Plaintiff Twyla Rusan ("Rusan") lives "on or near the Middle Fork," in Fairplay. (*Id.* ¶ 9.) Plaintiff M. Jamie Morrow ("Morrow") lives "near the Middle Fork," also in Fairplay. (*Id.* ¶ 10.)

Plaintiff The South Park Coalition, Inc. (the "SPC") is a non-profit corporation comprised of about 100 members, "some of whom live in or around the Middle Fork." (*Id.* ¶ 11.) The SPC "is an environmental, public interest and public trust advocacy organization working to enhance the natural resources of Park County, Colorado and the South Park Basin." (*Id.* ¶ 11.)

Plaintiff Be the Change USA ("BTC") is a non-profit corporation, some of whose members "live in or around the South Platte River." (*Id.* ¶ 12.) BTC "is an environmental, public interest and advocacy organization" whose "members are concerned about the water quality of the Middle Fork." (*Id.* ¶ 12.)

According to the Complaint, "[HMM]'s discharges adversely affect Plaintiffs' recreational activities (i.e. fishing, wading, dog walking, picnicking, hiking), tourism, and

3

other recreational and aesthetic enjoyment on the Middle Fork." (*Id.* ¶ 54.)

On February 19, 2019, Plaintiffs sent Defendants a notice of their intent to sue on the basis of Defendants' alleged CWA violations as described above. When no pretrial resolution of Plaintiffs' claims was achieved, they filed suit against Defendants on April 29, 2019, seeking (1) an order declaring Defendants to be in violation of the CWA; (2) the imposition of civil penalties on Defendants; and (3) an injunction ordering Defendants to seek an NPDES or SPDES permit and to rehabilitate the Middle Fork.

On June 28, 2019, Defendants filed the instant Motion (ECF No. 17), arguing that (1) Plaintiffs lack standing; (2) Plaintiff's notice of intent-to-sue was legally inadequate; (3) this Court should abstain from consideration of this action under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); and (4) that Plaintiffs have failed to state a claim under the CWA. On July 19, 2019, Plaintiffs filed a Response to Defendants' Motion (ECF No. 20), and Defendants filed a Reply on August 2, 2019 (ECF No. 22).

## II. LEGAL STANDARDS

### A.     Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. A facial attack questions the sufficiency of the complaint as to its subject matter jurisdiction allegations. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing a facial attack, courts accept all well-pled allegations as true, *id.*, and "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action, *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 12227 n.1 (10th Cir. 2010). A factual

attack, on the other hand, goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based. *Id*. at 1003. Article III standing is of course required for this Court to have subject matter jurisdiction in this matter. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

**B.     Rule 12(b)(6) Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Additionally, the Court may consider a document outside the pleadings, even in a 12(b)(6) analysis, if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Toone v. Wells Fargo*

*Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

## III. ANALYSIS

### A. Standing

Defendants argue Plaintiffs have not plausibly alleged that they have Article III standing to seek the relief requested. (ECF No. 17 at 8–9.) Defendants make a facial attack on the sufficiency of Plaintiffs' allegations as to standing (*id.*); as such, the Court will assume Plaintiffs' well-pleaded allegations regarding standing to be true, and will not look outside the four corners of Plaintiffs' Complaint in determining whether Plaintiffs have adequately alleged standing.

In order to establish Article III standing, Plaintiff must suffer "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560 (internal quotations omitted). Further, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal quotations and alterations omitted). Plaintiff must also establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted).

#### 1. <u>Injury In Fact</u>

"[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Benham v. Ozark*

*Materials River Rock, LLC*, 885 F.3d 1267, 1273 (10th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Id.*

        a.    *Stone, Rusan, & Morrow*

Plaintiffs allege that Stone lives on riparian land on the Middle Fork, Rusan lives "on or near" the Middle Fork, and Morrow lives "near" the Middle Fork. (ECF No. 1 ¶¶ 8–10.) All three live in Fairplay. (*Id.* ¶¶ 8–10.) Plaintiffs further allege that the pollution from the Mine "adversely affects Plaintiffs' recreational activities (i.e. fishing, wading, dog walking, picnicking, hiking) . . . and aesthetic enjoyment on the Middle Fork." (*Id.* ¶ 54.)

While it is unclear from the Complaint how often and to what extent these Plaintiffs would engage in recreational activities at and enjoy the aesthetics of the Middle Fork but for Defendants' alleged pollution—and how often and to what extent Plaintiffs nevertheless still do these things—the Court must view Plaintiffs' allegations in the light most favorable to them. Given that these three individual Plaintiffs live in Fairplay, "on" or "near" the Middle Fork, the Court concludes a plausible inference can be drawn that these Plaintiffs "use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity," *Benham*, 885 F.3d at 1273, with a frequency sufficient to constitute "actual or imminent" injury. As such, Stone, Rusan, and Morrow have plausibly alleged injury in fact.

7

b.  *SPC*

An association may bring suit on behalf of its members if "at least one of the organization's members would have standing to sue on his own," *United Food & Comm. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 554 (1996), "the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiffs allege that some of SPC's members live "in or around the Middle Fork," and that pollution from the Mine "adversely affects Plaintiffs' recreational activities (i.e. fishing, wading, dog walking, picnicking, hiking) . . . and aesthetic enjoyment on the Middle Fork." (*Id.* ¶ 54.) For the same reasons the Court found the individual Plaintiffs in this case to have plausibly alleged injury in fact, the Court concludes Plaintiffs have adequately alleged that at least one SPC member has as well.

The Court also finds that the interests sought to be vindicated by this lawsuit are clearly germane to SPC's alleged organizational purpose: "[SPC] is an environmental, public interest and public trust advocacy organization working to enhance the natural resources of Park County, Colorado and the South Park Basin." (*Id.* ¶ 11.) Further, there is no reason to believe that "the claim asserted [ ] or the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Accordingly, the Court concludes that SPC has plausibly alleged injury in fact.

c.  *BTC*

Plaintiff BTC is a "non-profit corporation, some of whose members and directors

8

live in or around the South Platte River." (ECF No. 1 ¶ 12.) Plaintiffs allege that the Middle Fork is a tributary of the South Platte River, but Plaintiffs do not allege with any specificity where on the South Platte River any of BTC's members live. Moreover, Plaintiffs do not allege what the length of the Middle Fork is in relation to that of the South Platte River which, depending on the relative lengths of those two bodies of water, could place BTC members far afield from the Middle Fork. As previously stated, the Court is satisfied that Plaintiffs living "on" or "near" the *Middle Fork* have plausibly alleged the actual or imminent nature of their injuries. Given the sparse pertinent allegations in the Complaint, however the Court is unable to also say that it is plausible that BTC members' injuries – that is, their alleged lessened ability to enjoy recreational activities on and the aesthetics of the Middle Fork – are actual or imminent. This is because the Plaintiffs do *not* allege that Defendants' conduct lessens BTC members' abilities to enjoy the South Platte River generally, irrespective of its proximity of the Middle Fork.

Accordingly, the Court concludes that Plaintiffs have not plausibly alleged that BTC has suffered an injury in fact. However, the Court cannot say with certainty that BTC could not, in an amended complaint, allege facts that would give rise to such a plausible inference. Defendants' Motion is therefore granted as to BTC's claim, but that claim will be dismissed without prejudice.

2. Causation

"[T]he traceability component of the standing test contemplates a causal relationship between the injury and the defendants' challenged acts." *United States v. Ramos*, 694 F.3d 1035, 1046 (10th Cir. 2012). Accepting Plaintiffs' allegations to be

9

true, there is no question that Plaintiffs' alleged injury is "fairly traceable to the challenged action of the defendant[s]." *Bronson v. Swensen*, 500 F.3d 1099, 1109 (10th Cir. 2007). Plaintiffs assert that the Mine creates pollutants that flow into the adjacent Middle Fork, and there is nothing in the Complaint that would indicate a break in the causal chain. Defendants have offered no reasons for inferring that, if Defendants are discharging pollutants into the Middle Fork, such actions are not causally related to Plaintiffs' allegations of injury. The Court concludes that Plaintiffs have plausibly alleged the causation element of standing.

3. <u>Redressability</u>

"[P]laintiff[s] must demonstrate standing for each form of relief sought." *Friends of the Earth*, 528 U.S. at 185 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff had standing to seek damages, but not to seek an injunction)). Plaintiffs here ask the Court to (1) "[i]ssue an Order enjoining Defendants' operations until Defendants obtain an NPDES or SPDES permit for their operations that result in discharges"; (2) "[e]nter a money a judgment imposing civil penalties against Defendants for their violations of the CWA"; (3) to "[o]rder remedial relief as necessary to restore, remediate and rehabilitate the Middle Fork and riparian areas caused by the violations" described in Plaintiffs' Complaint; and to (4) "[i]ssue an Order declaring Defendants in violation of the CWA."

      a. *Enjoining Defendants' Operations Until They Obtain An NPDES or SPDES Permit*

Whether or not an order from this Court requiring Defendants to cease operations at the Mine pending the issuance of a permit would be likely to redress

Plaintiffs' lessened enjoyment of the Middle Fork, Plaintiffs also allege that they suffer a "procedural injury" in Defendants' failure to obtain a permit, as required by the CWA.

With respect to procedural injuries, the Supreme Court has stated:

> The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.
>
> Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.

*Lujan*, 504 U.S. at 572 n.7; *see also S. Utah Wilderness Alliance v. Office of Surface Mining Reclamation and Enforcement*, 620 F.3d 1227 (10th Cir. 2010) (similar).

Plaintiffs have a procedural right under the citizen-suit provision of the CWA to protect their concrete interests, *see* 33 U.S.C. § 1365(a), which in this case are their abilities to enjoy recreating on, and the appreciating the aesthetics of, the Middle Fork. As such, the Court concludes that Plaintiffs have plausibly alleged redressability with respect to this form of relief. Plaintiffs have thus plausibly alleged that they have standing to seek an injunction requiring Defendants to engage in the relevant CWA permitting process.

      b.    *Civil Penalties*

"To the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing

unlawful conduct." *Friends of the Earth*, 528 U.S. at 186. While the Supreme Court has stated that there may be an outer bound with respect to when private citizens seeking civil penalties meet the redressability requirement, *id.* at 187, given the marked level of similarity between the instant case and *Friends of the Earth*, the Court concludes that Plaintiffs have plausibly alleged that they meet the redressability requirement with respect to seeking civil penalties. As such, Plaintiffs have plausibly alleged standing with respect to this form of relief.

        c.     *Rehabilitation of the Middle Fork*

Restoration of the Middle Fork is, presumably, the ultimate form of relief Plaintiffs seek. The Tenth Circuit has affirmed a district court's order directing the defendants to take measures to cure the harms to a body of water resulting from their discharged pollutants. *Benham*, 885 F.3d at 1273; *see also Weinburger v. Romero-Barcelo*, 456 U.S. 305 (1982) (district court permitted to exercise equitable discretion to order relief that will achieve compliance with the CWA); *United States v. Cumberland Farms of Conn., Inc.*, 826 F.2d 1151, 1164 (1st Cir. 1987) ([T]he district court had authority to issue such restorative orders so as to effectuate the stated goals of the Clean Water Act[.]"

At this stage of the litigation, *see Lujan*, 504 U.S. 561; *Muscogee*, 611 F.3d at 1227, the Court is satisfied that, were it to enter an order directing Defendants to ameliorate the harm to the Middle Fork they allegedly have caused, the Plaintiffs' injuries would likely be redressed. *See Benham*, 885 F.3d at 1273 (holding the redressability requirement to be met in part because of the district court's restoration

12

order). The Court therefore concludes that Plaintiffs have plausibly alleged they have standing to seek this form of relief.

### d. Declaratory Judgment

It is within the Court's authority to issue an order declaring Defendants' activities to be in violation of the CWA to the extent Plaintiffs have presented an "actual controversy." See 28 U.S.C. § 2201(a). "The requirements of [an Article III] case or controversy are of course no less strict under the Declaratory Judgment Act, than in case of other suits." *Altvater v. Freeman*, 319 U.S. 359, 363 (1943).

Plaintiffs have standing to seek a declaratory judgment only to the extent they have standing to seek "an immediately enforceable remedy" in this case (*e.g.*, an injunction). *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950). Because the Court concludes, as explained above, that Plaintiffs (with the exception of BTC) have standing to seek the other forms of relief they request, those Plaintiffs have standing to seek the Court's judgment declaring Defendants' actions to be in violation of the CWA.

## B. Abstention

Apart from standing, Defendants also argue that, because "Colorado already has detailed state law and procedures to address plaintiffs' concerns[,] . . . dismissal under [*Burford*, 319 U.S. 315] is appropriate." (ECF No. 17 at 10.) The Court finds this argument to be without merit.

In *Burford*, the Supreme Court concluded:

> [A] suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of

> transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields.

*Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 814–15 (1976) (citing *Burford*, 319 U.S. 315).

In the Court's view, *Burford* abstention is plainly not required here. As an initial matter, there are no Colorado state law claims, or even any questions of Colorado law, presented in this case. *Cf. Burford*, 424 U.S. at 328–32. And there is no ongoing Colorado proceeding that Plaintiffs are asking the Court to enjoin or interfere with in any way. *Cf. id.* Nor would this Court's exercise of jurisdiction "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colo. River*, 424 U.S. at 814. The mere fact that Colorado regulates the discharge of pollutants into its waters, by itself and without more, is no reason for this Court to decline to exercise jurisdiction over this matter. Indeed, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813. The Court accordingly declines to abstain from entertaining this action under *Burford*.

**C.    Notice**

Under the CWA and accompanying regulations, Plaintiffs were required to send Defendants a detailed notice of Defendants' alleged violations of the CWA at least sixty days before bringing suit. 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.3(a). Plaintiffs attached the notice ("Notice") with their Complaint (ECF No. 1-1), and Defendants do

not dispute its authenticity.

Defendants argue that dismissal of this case is appropriate because Plaintiffs' Notice was deficient. The regulation applicable to this issue provides as follows:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a).

"The purpose of the notice to the alleged violator is to give it an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit." *Karr v. Hefner*, 475 F.3d 1192, 1200 (10th Cir. 2007) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987)).

1. <u>Point Sources</u>

"Identifying a point-source-discharge violation requires identifying a point source." *Karr*, 475 F.3d at 1203. Plaintiffs in their Notice allege with specificity the point sources from which Defendants are allegedly discharging pollutants, and the activities that give rise to the existence of such point sources.

The Notice states:

> [T]he Mine process uses gravity concentration to segregate and wash the placer material, which consists of sand, gravel and clay/silt, thus separating the gold from the material and leaving sand and gravel as a saleable byproduct. The gravel is washed with water and then reused via four settling ponds with Pong 1 receiving most of the fine sand from the plant not capture in the sand recover system. The discharge from Pond 1 flows to Pond 2, then to Pond 3 and then to

15

Pond 4.

(ECF No. 1-1 at 1–2.)

Plaintiffs also assert in their Notice that Settling Ponds 3 and 4, located 23.4 feet from the Middle Fork, are point sources that discharge pollutants "which are then conveyed into the groundwater system and then into surface waters of the adjacent Middle Fork." (ECF No. 1-1 at 2.)

Plaintiffs also assert that South Ponds 3 and 4 "are designed to handle pumped water from the active mining pit," and contain pollutants which flow through a wetlands area on Defendants' property, through the North and South Culverts (the longitudes and latitudes of which are also provided in the Notice), into the Middle Fork. (*Id.* at 2–3.) Plaintiffs also identify precisely which pollutants allegedly are being discharged into the Middle Fork . (*Id.* at 3–6.)

2. Laws and Regulations Allegedly Violated

With respect to the CWA violations Plaintiffs allege Defendants to be committing, the Notice states as follows:

> The Alleged Violators are discharging sediments and/or pollutants into the Middle Fork without obtaining a national or state pollutant discharge elimination system ("NPDES" or "SPDES") permit or dredge and fill permit, or CDPS permit, or a certification that such discharges meet Colorado water quality standards.
>
> To clarify, the Alleged Violators need not be violating any specific Colorado water quality standards to be in violation of the Clean Water Act's effluent standards, limitations and orders. The standards, limitations and orders being violated are as follows:
>
> **33 U.S.C. § 1311(a)** ("Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and

1344 of this title, the discharge of any pollutant by any person shall be unlawful.");

**33 U.S.C. § 1341(a)(1)** ("Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate...");

**C.R.S. § 25-8-501(1)** ("No person shall discharge any pollutant into any state water from a point source without first having obtained a permit from the division for such discharge, and no person shall discharge into a ditch or man-made conveyance for the purpose of evading the requirement to obtain a permit under this article.");

**5 C.C.R. 1002-61.3(1)(a)** ("No person shall discharge any pollutant into any state water from a point source without first having obtained a permit from the Division for such discharge.... [N]othing in this subsection shall exempt any point source discharger which generates wastewater effluent from the requirement of obtaining a permit pursuant to these regulations."); and

Finally, the Alleged Violators have violated the permitting requirements of **33 U.S.C. § 1342(a)(1)** (NPDES) and **33 U.S.C. § 1344(a)** (dredge and fill) by failing to obtain permits under either of these permitting programs. The Alleged Violators have no NPDES, SPDES, CDPS or dredge and fill permit for the discharges identified in this Notice.

(*Id.* at 6–7.)

Plaintiffs allege that Defendants' violations have been ongoing since at least November 5, 2016. (*Id.* at 3–6.) As required by 40 C.F.R. § 135.3(a), Plaintiffs' Notice also identifies "the person or persons responsible for the alleged violation, and the full name, address, and telephone number of the person[s] giving notice." (ECF No. 1-1 at 7–8.)

17

In light of the above, the Court concludes that Plaintiffs' Notice was sufficient to "give [Defendants] an opportunity to bring [themselves] into compliance with the Act and thus likewise render unnecessary a citizen suit." *Karr*, 475 F.3d at 1200. As such, Defendants' Motion is denied on the grounds that Plaintiffs' Notice was legally inadequate.

**D.     Merits**

   1.     Discharges From The Settling Ponds

Given the pendency in the Supreme Court of *Hawai'i Wildlife Fund v. Cnty. of Maui*, 886 F.3d 737 (9th Cir. 2018), *cert. granted sub nom. Cnty. Of Maui, Hawai'i v. Hawai'i Wildlife Fund*, 139 S. Ct. 1164 (2019) (argued Nov. 6, 2019), the Court will reserve ruling on whether Plaintiffs' have plausibly alleged that Defendants' discharges flowing from the Settling Ponds into the groundwater, and from the groundwater into the Middle Fork, constitute a violation of the CWA (without a proper permit). Should the Supreme Court reverse the Ninth Circuit in that case, Defendants would likely be entitled to judgment on this theory of liability, and Defendants may then seek such judgment in a Rule 56 motion for summary judgment.

   2.     Discharges From The South Ponds

With respect to this alternate theory of liability, Defendants simply assert that the North and South Culverts are not located on their property. Plaintiffs aver in their Complaint, however, that the culverts "begin on Alma Placer Mine Property" (ECF No. 1 ¶ 35), and the Court, for purposes of the Motion, must assume that this is true. In any event, Defendants point the Court to not a single case or any other legal basis for

18

holding that Plaintiffs' claim would be foreclosed if the culverts are, in fact, not located entirely on Defendants' property. The Court will not construct arguments on Defendants' behalf, and at least for purposes of the Motion, the Court considers this argument to be forfeited. *See Domokos v. Shelter Mut. Ins. Co.*, 2019 WL 4645430, — F. Supp. 3d — (D. Colo. 2019) (citing *McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010)). Defendants' Motion is accordingly denied on the grounds that Plaintiffs have failed to state a claim on this theory of liability.

## IV.  CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 17) is GRANTED as to Plaintiff Be The Change USA's claim, and DENIED in all other respects;

2. Plaintiff Be The Change USA's claim is DISMISSED WITHOUT PREJUDICE;

3. The Stay of this Case pending resolution of Defendants' Motion to Dismiss (ECF No. 34) is LIFTED; and

2. The Parties are DIRECTED to contact the Chambers of U.S. Magistrate Judge Scott T. Varholak within 48 hours of the entry of this Order in order to set this matter for a Scheduling Conference as soon as is practicable, as this case remains pending on the claims of Plaintiffs Stone, Rusan, Morrow, and the South Park Coalition.

Dated this 12th day of February, 2020.

BY THE COURT:

William J. Martínez
United States District Judge